IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CPM CONSULTING, LLC and<br>MARTINO RIVAPLATA, | §<br>§<br>§ | |
| Plaintiffs, | §<br>§ | CIVIL ACTION NO. |
| v. | §<br>§ | 3:17-cv-03059-N |
| CAPSUGEL US, LLC, | §<br>§ | JURY DEMANDED |
| Defendant. | §<br>§ | |

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

**TO THE HONORABLE U.S. DISTRICT JUDGE:**

Plaintiffs CPM Consulting, LLC ("CPM") and Martino Rivaplata ("Rivaplata," collectively with CPM, "Plaintiffs") file their Second Amended Complaint against Capsugel US, LLC ("Capsugel") seeking recovery for violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12, violation of 8 U.S.C. §1324B, and tortious interference with a contract formed in the state of Texas.

In support of these claims, Plaintiffs respectfully show the Court the following:

**I. THE PARTIES**

1.      Plaintiff CPM is a Texas limited liability company, duly formed and existing under the laws of the State of Texas.

2.      Plaintiff Rivaplata is a member of CPM and a resident of the State of Texas.

3.      Defendant Capsugel is a Delaware corporation having a principal place of business in New Jersey. Capsugel may be served with process by and through its counsel of record.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over this lawsuit based on the diversity of citizenship of the parties under 28 U.S.C. § 1332.

5. Venue is proper in the Northern District of Texas because many of the events forming the basis of the suit occurred in this District and one or more of the parties resides in this district. The amount in controversy exceeds $75,000.00

## III. FACTUAL BACKGROUND TO CLAIMS

6. Rivaplata is a citizen of the United States of America who resides in the State of Texas. CPM is a Texas-based LLC with its principal place of business located in Dallas, Dallas County, Texas. Rivaplata is the owner and sole member of CPM.

7. Rivaplata, by and through his company CPM, executed a Subcontract Services Agreement (Agreement) with Robert Half Technology on or about April 3, 2017 to provide Capsugel with a SAP HANA Data Modeler (the "Project").

8. During the interview process, Rivaplata was informed by Capsugel's hiring manager, Muralidhar Nuggehalli, that the project would last a minimum of six months, and the project's minimum six-month duration was reflected in the Agreement. Nuggehalli was aware of Rivaplata's Agreement with Robert Half, and was aware that Rivaplata would temporarily relocate to New Jersey and rent an apartment to perform the contracted work for Capsugel. Another Capsugel employee advised Rivaplata what areas in New Jersey to consider for apartments to rent.

9. Rivaplata's work for Capsugel was managed by Nuggehalli. Upon information and belief, Nuggehalli is an Indian national.

10. During his work on the project, Rivaplata received nothing but positive feedback on his work product from those at Capsugel.

11. Despite his excellent work performance and positive feedback, on June 14, 2017, Rivaplata was advised by Nuggehalli that his services would be terminated effective June 30, 2017—three months before the 6-month Project completion date. Rivaplata was later instructed to transition the project to three Capsugel employees believed to be from India: Venugopal Nair, Muppaneni Karunankar, and Yokesh Sivakumar.

12. Capsugel unlawfully discriminated in terminating Rivaplata and CPM from the Project on the basis of his nationality (United States) in favor of three Indian nationals.

13. Based on the foregoing, Plaintiffs bring the following claims for violations of the New Jersey Law Against Discrimination and tortious interference with CPM's contract with Robert Half.

## IV. CAUSE OF ACTION AGAINST CAPSUGEL
### COUNT ONE: VIOLATION OF NEW JERSEY LAW AGAINST DISCRIMINATION

14. Plaintiffs hereby incorporate and re-allege the matters set forth in the preceding paragraphs as if set forth at length.

15. This court has general personal jurisdiction over Capsugel. Rivaplata as the owner of CPM brings this claim for violations of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 *et seq.*, which occurred while he was a Texas resident temporarily working for Capsugel in New Jersey. Capsugel's actions resulted in the termination of CPM's subcontractor agreement with Robert Half -- a contract negotiated and executed in the State of Texas, which caused loss of income damage to CPM and Rivaplata in the State of Texas.

16. Rivaplata is an individual who belongs to a protected class because of his nationality (United States citizen).

17. Capsugel is an employer located in Morristown, New Jersey, which hires and utilizes Indian workers on H-1B visas.

18.     Rivaplata was qualified for the consulting work he was hired to perform for Capsugel. He performed the work adequately and received nothing but praise on his work product while working at the project.

19.     The Department of Justice (DOJ) has recently cautioned employers seeking H-1B visas not to discriminate against U.S. workers, as it is violative of the Immigration Reform and Control Act (IRCA), 8 U.S.C. § 1324b.  The New Jersey Anti-Discrimination Act, N.J.S.A. 10:5-1 *et seq.* (LAD), likewise prohibits such form of discrimination in any job-related action, including recruitment, interviewing, hiring, and discharging.  The statute also prohibits unlawful discrimination in business contracts.

20.     Capsugel intentionally terminated Plaintiff from the Project three months before its minimum scheduled completion date, despite excellent work performance, so that it could transition the Project to three Capsugel employees from India, who had cheaper labor rates than Plaintiff.  The termination was due to Rivaplata's nationality (U.S. Citizen).

21.     The foregoing allegations are sufficient to support a *prima facie* claim of discrimination under the LAD. In addition, upon information and belief, Capsugel, which hires and utilizes employees of Indian ancestry under H1b visas, has a pattern or practice of discriminating against U.S. citizens by transitioning their jobs to Capsugel's employees from India.

22.     Plaintiffs CPM and Rivaplata have suffered and sustained substantial injury by reason of Capsugel's unlawful discrimination in violation of the LAD, for which they seek appropriate judicial relief including, but not limited to, injunctive relief prohibiting the favoritism of Indian nationals over U.S. citizens, the recovery of actual and special monetary damages (including compensatory and consequential damages), back pay, front pay, compensatory damages for pain,

suffering, and humiliation, reinstatement, interest, and reasonable attorneys' fees and costs in an amount which exceeds the minimum jurisdictional limits of the Court.

23. Plaintiffs are not required to exhaust administrative remedies under the LAD.

## COUNT TWO
## TORTIOUS INTERFERENCE WITH CONTRACT

24. Plaintiffs hereby incorporate and re-allege the matters set forth in the preceding paragraphs as if set forth at length.

25. CPM and Robert Half Technology executed a Subcontract Services Agreement in the State of Texas for the purpose of having CPM and Rivaplata perform services for Capsugel. During the interview process, Rivaplata was informed by both Barry Cornier the recruiter for Robert Half and by Capsugel's hiring manager, Muralidhar Nuggehalli, that the project would last a minimum of six months, and the project's minimum six-month + duration was reflected in the Agreement.

26. Both Nuggehalli and Danny Dupont of Capsugel were aware of Rivaplata's Agreement with Robert Half and its length of 6 months plus. They were further aware that Rivaplata would be required to temporarily relocate to New Jersey and of his intent to rent an apartment to perform the contracted work for Capsugel. Another Capsugel employee advised Rivaplata what areas in New Jersey to consider for apartments to rent. Barry Cormier stayed in contact with Rivaplata to check on the status of the contract and informed him the project could last a year, and he remained in contact with both Nuggehalli and Dupont about the contract project lasting longer than 6 months.

27. In reliance on the Agreement and the assurances he received during the interview process, Plaintiff temporarily relocated from his workplace in Texas to the project site in New Jersey in order to provide services pursuant to the Agreement. Plaintiff would not have relocated to New Jersey and entered into a 1-year apartment lease but for the assurances he received from both Robert Half and Nuggehalli that the project duration was for 6+ months, which in industry

vernacular, meant a minimum of one year. Plaintiff continued to receive assurances that his work at the project would last more than six months, including the timesheets Capsugel set up on its website for Plaintiff to enter his work hours, which was synched with Robert Half's webpages, that reflected the project was 6 months plus.

28. Capsugel terminated Plaintiffs services effective June 30, 2017—only three months into the project schedule. Capsugel's decision to terminate CPM and Rivaplata from the Project was done knowingly, willfully and intentionally by Capsugel with knowledge of the Subcontract Services Agreement between Plaintiffs and Robert Half, and that the project length was 6 months plus.

29. Capsugel's intentional interference with Plaintiffs' contract with Robert Half was the proximate cause of Plaintiffs losing at least $84,480.00 in income for the next three months of the Project. Additionally, despite diligent efforts on his part, Rivaplata has been unemployed for nearly 12 months since Capsugel interfered with Plaintiffs' contract with Robert Half, causing Plaintiffs additional loss of income and revenue, for which they sue to recover of and from Capsugel.

## V. RELIEF SOUGHT

WHEREAS, cause having been shown, Plaintiffs pray for judgment against Defendant as follows:

    A. An award of their actual and special damages as pleaded herein, including front pay, back pay, reinstatement, and all compensatory, exemplary, consequential, and economic damages within the jurisdictional limits of the Court;

    B. Plaintiffs' reasonable attorney's fees;

    C. Plaintiffs' costs of Court;

    D. Pre-judgment and post-judgment interest at the highest rate(s) allowed by law;

E. Such other and further relief, at law or in equity, to which Plaintiffs may be entitled.

Respectfully submitted,

_____

Steven E. Clark
State Bar No. 04294800
Email: sclark@dfwlaborlaw.com

Amanda Todd-Thomas
State Bar No. 24042656
Email: atoddthomas@gmail.com

CLARK FIRM PLLC
10000 N. Central Expressway, Suite400
Dallas, Texas 75231
Tel.: (214) 890-4066
Fax: (214) 890-4013

ATTORNEYS FOR PLAINTIFFS
MARTINO RIVAPLATA and
CPM CONSULTING, LLC

## CERTIFICATE OF SERVICE

On May 18, 2018, I electronically submitted the foregoing document to the Clerk of the Court of the U.S. District Court for the Northern District of Texas, using the electronic case filing system.  I hereby certify that I have served Defendant's counsel of record electronically or by another manner authorized by Rule 5(b)(2) of the Federal Rules of Civil Procedure.



_____
Steven E. Clark