United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CPM CONSULTING LLC and<br>MARTINO RIVAPLATA | §<br>§<br>§ | |
| v. | § | CASE NO. 3:17-cv-3059-S |
| | § | |
| CAPSUGEL US, LLC | §<br>§ | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Capsugel US, LLC's ("Defendant") Amended Motion to Dismiss and to Transfer Venue (the "Motion") [ECF No. 30]. For the reasons that follow, the Court grants the Motion and transfers the above-captioned matter to the United States District Court for the District of New Jersey.

### I. BACKGROUND

Plaintiff CPM Consulting, LLC ("CPM") is a Texas limited liability company whose sole member and owner is Plaintiff Martino Rivaplata ("Rivaplata"). *See* Second Am. Compl. ¶¶ 1-2, 6. CPM and Rivaplata (collectively, "Plaintiffs") executed an agreement with Robert Half Technology ("RHT") in April 2017 to provide Defendant with a SAP HANA Data Modeler. *See id.* ¶ 7. Although the agreement was allegedly negotiated and executed in Texas, Rivaplata needed to relocate to New Jersey—where Defendant is located—to perform the contract. *See id.* ¶¶ 3, 8, 15, 17. Plaintiffs were allegedly assured by RHT and Defendant that the project would last at least six months. *See id.* ¶¶ 8, 25. Nonetheless, Defendant terminated Plaintiffs three months early, allegedly in favor of hiring three Indian nationals. *See id.* ¶¶ 11-12.

Based on these allegations, Plaintiffs contend that the termination violated the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq. See id.* ¶ 15. Plaintiffs further contend that, by terminating Plaintiffs early, Defendant tortiously interfered with Plaintiffs'

contract with RHT. *See id.* ¶ 26. In the Motion, Defendant moves to dismiss the tortious interference claim and to transfer the remaining NJLAD claim to the New Jersey district court.

## II. LEGAL STANDARD

### A. *Motion to Dismiss*

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the

2

plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

## B. *Transfer of Venue*

28 U.S.C. § 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As a plaintiff's original choice of forum is ordinarily entitled to some deference, the party seeking transfer must "demonstrate[] that the transferee venue is clearly more convenient." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). The plaintiff's choice of forum is not, however, "an independent factor within . . . the § 1404(a) analysis." *Id.* 314 n.10.

In applying § 1404(a), the Court must first determine "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citation omitted). Once this determination is made,

> [the Court] turn[s] to the language of § 1404(a), which speaks to the issue of "the convenience of parties and witnesses" and to the issue of "in the interest of justice." The determination of "convenience" turns on a number of private and public interest factors, none of which are given dispositive weight. The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law.

*Id.* (citations omitted).

After considering "[a]ll relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer

3

to a different forum," the decision to transfer venue under § 1404(a) is left to the sound discretion of this Court. *El Chico Rests. of Tex., Inc. v. Carroll*, Civ. A. No. 3:09-CV-2294-L, 2010 WL 2652286, at *2 (N.D. Tex. June 29, 2010) (alteration in original) (quoting *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989)).

### III. ANALYSIS

#### A. *Motion to Dismiss*

"The elements of a tortious interference with contract claim are: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) such act was a proximate cause of damage; and (4) actual damage or loss occurred." *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 864 (5th Cir. 2004) (citation omitted). To prevail on a claim for tortious interference with an existing contract, a plaintiff must present evidence that the defendant induced a third party to breach the contract. *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421-22 (Tex. 2017). For the act of interference to be intentional or willful, "[t]he interfering party must know of the existence of a contract between the plaintiff and a third party." *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 123 (Tex. App.—El Paso 1997, pet. denied). Defendant contends that Plaintiffs did not plead sufficient facts to show that it was aware of the specific contract between Plaintiffs and RHT.

Here, the Complaint states that Defendant was "aware of [Plaintiffs'] Agreement with [RHT] and its length of 6 months plus" and that Defendant acted "with knowledge of the Subcontract Services Agreement." Second Am. Compl. ¶¶ 26, 28. These conclusory allegations of knowledge are insufficient to state a tortious interference claim. *See Hoffman v. L&M Arts*, 774 F. Supp. 2d 826, 846 (N.D. Tex. 2011) ("It is not enough to allege that a defendant had 'knowledge' of a contract or 'intentionally' interfered because this is nothing more than a recital of some of the required elements for a claim of tortious interference with contract."). Plaintiffs contend that they

4

showed that Defendant knew of their agreement with RHT because (1) Defendant knew that Rivaplata needed to relocate to New Jersey, (2) Defendant's employees advised Rivaplata about local apartments, and (3) RHT and Defendant both informed Rivaplata about the likely duration of Rivaplata's work for Defendant during the interview process. *See* Second Am. Compl. ¶¶ 25-26; Resp. ¶ 7. Even viewing the Complaint in the light most favorable to Plaintiffs, these allegations show at most that Defendant knew that Rivaplata would perform work for it on RHT's behalf. These allegations are insufficient to show that Defendant was aware of a specific *contract* between Plaintiffs and RHT. Accordingly, the Court grants the Motion to Dismiss because the Complaint does not include sufficient facts to show that Defendant was aware of any specific contract between Plaintiffs and RHT.[1]

### B. *Transfer of Venue*

As explained above, a court deciding a motion for transfer of venue must first determine whether the judicial district to which transfer is sought is a district in which the claim could have been filed, and then determine whether private and public concerns weigh in favor of or against the transfer. *See In re Volkswagen AG*, 371 F.3d at 203 (citation omitted).

First, the Court finds that venue would be proper in the District of New Jersey. Under the general venue statute, "[a] civil action may be brought in . . . a judicial district in which any defendant resides" or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1)-(2). Here, Plaintiffs allege Defendant "is a Delaware corporation having a principal place of business in New Jersey." Second Am.

---

[1] The Court notes that Defendant in its Reply Brief states that it knew that "[Plaintiffs] would enter into a contract with [RHT] to provide services to [Defendant]." Reply 4. In ruling on a Rule 12(b)(6) motion, however, the Court limits its review to the face of the pleadings, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), and so cannot consider Defendant's factual claim. Even if the Court could consider Defendant's statement, the fact that Defendant knew that Plaintiffs "*would* enter into a contract with [RHT]" does not mean that Defendant was aware that Plaintiffs *had* a contract with RHT. Reply 4 (emphasis added).

5

Compl. ¶ 3. Accordingly, Defendant "resides" in New Jersey. *Westberry v. GusTech Commc'ns, LLC*, Civ. A. No. 3:17-CV-3162-D, 2018 WL 3548869, at *2 (N.D. Tex. July 24, 2018) (explaining that a corporate defendant resides in any district where it is subject to personal jurisdiction). Additionally, the Court finds that a substantial part of the events or omissions giving rise to the NJLAD claim occurred in New Jersey, because Defendant allegedly replaced Rivaplata with three Indian nationals in New Jersey. *See* Second Am. Compl. ¶¶ 12, 15, 17. Moreover, Plaintiffs do not contend that venue is not proper in New Jersey. Accordingly, the Court finds that the present lawsuit could have been brought in the District of New Jersey.

Second, the Court finds that the private concerns support the transfer of venue. Plaintiffs' NJLAD claim is based on Defendant's allegedly discriminatory replacement of Rivaplata with three Indian nationals while Rivaplata was performing work for Defendant in New Jersey. *See id.* ¶¶ 11-12, 18, 20. Thus, Plaintiffs' claim would require the parties to depose, and have available for trial, Rivaplata's coworkers and replacements—all of whom are likely located in New Jersey—as well as obtain the records of the New Jersey office where Rivaplata worked. Moreover, the Court may not have jurisdiction over many of these witnesses to compel their attendance at trial, and the cost for the willing witnesses to attend a trial in Texas would be significantly higher than for those witnesses to attend a trial in New Jersey. Although the Court recognizes that transferring venue to New Jersey may minimally increase the cost of a trial for Plaintiffs, the Court finds that, on balance, the trial of the case would be more expeditious, and less expensive in New Jersey.

Finally, the Court finds that the public concerns also weigh in favor of transferring the case to New Jersey. New Jersey courts have a higher localized interest in adjudicating claims brought under New Jersey law than Texas courts. *See Bedrock Logistics, LLC v. Braintree Labs., Inc.*, Civ. A. No. 3:16-cv-2815-M, 2017 WL 1547013, at *4 (N.D. Tex. Apr. 28, 2017) ("This factor

'generally favors the venue where the acts giving rise to the lawsuit occurred.'" (quoting *Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.*, Civ. A. No. 3:07-CV-2042-D, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008))). By the same token, New Jersey courts would be very familiar with New Jersey law, and transferring the case to New Jersey would avoid an unnecessary application of another state's law. *See Highpoint Risk Servs. LLC v. Companion Prop. & Cas. Ins.*, Civ. A. No. 3:14-CV-3398-L(BH), 2016 WL 4479511, at *15 (N.D. Tex. Aug. 25, 2016). The Court finds that the litigation would more conveniently proceed and the interests of justice would be better served by transferring the case to New Jersey, and grants the Motion to Transfer Venue.[2]

Additionally, the Court notes that it would transfer the above-captioned matter to New Jersey even if the Court did not dismiss the tortious interference claim. The tortious interference claim appears to also be premised on Defendant's decision to terminate Rivaplata. *See* Second Am. Compl. ¶ 28. Thus, evidence of whether Defendant acted intentionally or willfully, as well as evidence bearing on Defendant's knowledge of the existence of a contract between Plaintiffs and RHT, likely all exist in New Jersey. Consequently, all of the private concerns weighing in favor of transferring the NJLAD claim also weigh in favor of transferring the tortious interference claim. Although some of the public concerns may weigh against transfer of the tortious interference claim—e.g., Texas courts would be more interested in and adept at resolving a tortious interference claim brought under Texas law[3]—the Court finds that Defendant demonstrated that

---

[2] As the Court finds that most of the private and public concerns weigh heavily in favor of transferring this case to the United States District Court for the District of New Jersey, the Court does not address Plaintiffs' argument that New Jersey courts are more congested than Texas courts. *See* Resp. ¶ 16. *See also Action Indus., Inc. v. U.S. Fidelity & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) ("[N]one of [the factors] can be said to be of dispositive weight.").

[3] The Court cannot find at this time that the transfer of a tortious interference claim would create an unnecessary conflict of laws. For one, neither Plaintiffs nor Defendant argue that New Jersey and Texas law of tortious interference are in conflict. Even if there was a conflict, both states would look to the same factors to determine which state's law to apply: (a) where the injury occurred; (b) where the conduct giving rise to the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the

7

New Jersey is a clearly more convenient venue even if the Court did not dismiss the tortious interference claim. Consequently, the Court grants the Motion to Transfer Venue in the interest of justice.

## IV. CONCLUSION

For the reasons discussed above, the Court grants the Motion. The Court dismisses the tortious interference claim without prejudice and transfers the remaining NJLAD claim to the United States District Court for the District of New Jersey.

**SO ORDERED.**

SIGNED August 9, 2019.

KAREN GREN SCHOLER
**UNITED STATES DISTRICT JUDGE**

---

relationship, if any, between the parties is centered. *Compare MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g, Inc.*, 422 F. Supp. 2d 724, 739 (N.D. Tex. 2006) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (AM. LAW INST. 1971)), *with Rodin Props.-Shore Mall, N.V. v. Cushman & Wakefield of Penn., Inc.*, 49 F. Supp. 2d 728, 733 (D.N.J. 1999) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (AM. LAW INST. 1969)). Thus, a conflict of laws, if any, would be resolved the same way in Texas as in New Jersey.