JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, New Jersey 07922
(908) 795-5200
Attorneys for Defendant
Capsugel US, LLC

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

------------------------------------------------------------X

CPM CONSULTING, LLC AND
MARTINO RIVAPLATA,

             Plaintiffs,

   v.

CAPSUGEL US, LLC,

             Defendant.

------------------------------------------------------------X

Civil Action No.: 2:19-cv-16579-JMV-JBC

**DEFENDANT CAPSUGEL US, LLC'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

James M. McDonnell (Bar ID #030572001)
**JACKSON LEWIS P.C.**
200 Connell Drive, Suite 2000
Berkeley Heights, New Jersey 07922
Telephone: 908-795-5200
Facsimile: 908-464-2614
James.McDonnell@jacksonlewis.com

Talley R. Parker
Texas Bar No. 24065872
(Admitted *Pro Hac Vice*)
Melanie Uremovich
(Admitted *Pro Hac Vice*)
Texas Bar No. 24106538
**JACKSON LEWIS P.C.**
500 N. Akard, Suite 2500
Dallas, Texas 75201
Telephone: 214-520-2400
Facsimile: 214-520-2008
Talley.Parker@jacksonlewis.com
Melanie.Uremovich@jacksonlewis.com

**ATTORNEYS FOR DEFENDANT CAPSUGEL US, LLC**

**DEFENDANT CAPSUGEL US, LLC'S**
**BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ........................................................................................... 1

II. STATEMENT OF FACTS .................................................................................................... 2

III. ARGUMENT & AUTHORITIES ......................................................................................... 3

    A.   Summary Judgment On Rivaplata's LAD Claim Is Proper Because Rivaplata Was Not An Employee Of Capsugel And Because Capsugel Did Not Refuse To Contract With Rivaplata. ...................................................................................................................... 3

        1.   Capsugel Is Not Liable To Rivaplata Under N.J.S.A. § 10:5-12(a) Because Capsugel Never Employed Rivaplata Or Contracted With Him. .......................... 3

        2.   Rivaplata's Discrimination Claim As An Independent Contractor Under N.J.S.A. § 10:5-12(l) Also Fails Because He Has No Competent Evidence That Capsugel Refused To Do Business With Him Because Of His Nationality. .......................... 7

    B.   Even If Rivaplata Was An Employee of Capsugel, His Discrimination Claim Fails Because He Cannot Establish a *Prima Facie* Case of Discrimination. .......................... 9

        1.   Legal Framework For Analyzing Rivaplata's Discrimination Claim. ..................... 9

        2.   Rivaplata Cannot Establish a *Prima Facie* Case Of Discrimination. ................... 11

        3.   Rivaplata's LAD Claim Fails Because He Cannot Establish Pretext. ................... 12

IV. CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*Beatty v. Farmer*,
    366 N.J. Super. 69 (App. Div. 2004) ...................................................................................10

*Bergen Commercial Bank v. Sisler*,
    157 N.J. 188 (1999) ............................................................................................................10

*Carney v. Dexter Shoe Co.*,
    701 F. Supp. 1093 (D.N.J. 1988) .........................................................................................4

*Chrisanthis v. Cty. of Atl.*,
    361 N.J. Super. 448 (App. Div. 2003) .................................................................................4

*D'Annunzio v. Prudential Ins. Co. of Am.*,
    192 N.J. 110 (2007) .............................................................................................................5

*DeMoss v. The ARC of Somerset County*,
    NO. A-2927-13T4, 2015 N.J. Super. Unpub. LEXIS 278 .................................................10

*Dixon v. Rutgers, The State Univ. of New Jersey*,
    110 N.J. 432 (1988) .......................................................................................................9, 10

*El-Sioufi v. St. Peter's Univ. Hospital*,
    382 N.J. Super. 145 (App. Div. 2005) ...........................................................................9, 10

*Fulton v. Sunhillo Corp.*,
    No. A-2021-11T4, 2013 N.J. Super. Unpub. LEXIS 2770 .................................................10

*Greenberg v. Camden Cty. Vocational and Technical Schools*,
    310 N.J. Super 189 (App. Div. 1998) ................................................................................10

*J.S. v. Borough of Englewood Cliffs*,
    No. A-5938-12T1, 2015 N.J. Super. Unpub. LEXIS 1151 ..................................................9

*Limbeck v. Cty. of Cumberland*,
    No. 03-5816 (JBS), 2006 U.S. Dist. LEXIS 64383 (D.N.J. Sep. 8, 2006) ...........................5

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) .......................................................................................................9, 10

*Pukowsky v. Caruso*,
    312 N.J. Super. 171 (App. Div. 1998) ..............................................................................4, 5

*Rubin v. Chilton*,
    359 N.J. Super. 105 (App. Div. 2003) ..............................................................................5, 8

**Statutes**

N.J.S.A. § 10:5-12....................................................................................................................1

N.J.S.A. § 10:5-12(a) ......................................................................................... *passim*

N.J.S.A. § 10:5-12(l) .......................................................................................... *passim*

## I.   PRELIMINARY STATEMENT

Defendant Capsugel US, LLC ("Capsugel" or "Defendant") moves the Court to grant summary judgment on Plaintiff Martino Rivaplata's ("Rivaplata") national origin discrimination claim.[1]

Rivaplata, by and through his company, CPM, performed work for Capsugel in Morristown, New Jersey for approximately three months beginning in the Spring of 2017 pursuant to two separate service agreements. The first agreement was entered into by Capsugel and staffing firm Robert Half International, Inc., through its division Robert Half Technology & The Creative Group ("Robert Half") ("Capsugel's Agreement"). The second agreement, a subcontractor agreement, was entered into by CPM and Robert Half Nevada Staff, Inc., through its division Robert Half Technology ("CPM's Agreement"). The CPM Agreement included a work schedule and a personnel agreement for Rivaplata individually.

Rivaplata and CPM filed this lawsuit on October 2, 2017 in the 95th District Court of Dallas County, Texas, wherein Plaintiffs asserted a tortious interference with contract claim, and Rivaplata individually alleged that CPM's Agreement was terminated on the basis of his nationality in violation of the New Jersey Law Against Discrimination N.J.S.A. § 10:5-12 ("LAD").[2] On November 6, 2017, Capsugel removed the lawsuit to the Dallas Division of the United States District Court for the Northern District of Texas.

---

[1] On August 9, 2019, Plaintiffs Rivaplata and CPM Consulting, LLC's ("CPM") tortious interference with contract claim was dismissed by Judge Scholer of the Dallas Division of the United States District Judge for the Northern District of Texas.

[2] Rivaplata is the only plaintiff in this case who asserts a LAD claim. *See* Plaintiffs' Second Amended Complaint (D.E. 19 at ¶¶ 15-16) and Plaintiffs' Response to Defendant's Motion to Dismiss Claims in Plaintiffs' Second Amended Complaint, or in the Alternative to Transfer Venue, and Brief in Support (D.E. 21, fn. 2).

**DEFENDANT CAPSUGEL US, LLC'S**
**BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**                          **PAGE 1**

While one of Capsugel's motions to dismiss was pending, the parties engaged in discovery and Capsugel later moved for summary judgment on all of Plaintiffs' claims. On August 9, 2019, Judge Scholer dismissed Plaintiffs' claims for tortious interference with contract and transferred Rivaplata's remaining LAD claim to this Court (D.E. 59). As a result, the only "live" claim is Rivaplata's LAD claim.

Summary judgment is warranted on Rivaplata's LAD claim because he was not an employee for purposes of section 10:5-12(a), he has no competent evidence to establish that Capsugel refused to contract with him because of his nationality under section 10:5-12(l), and, even if he were deemed an employee, he cannot establish a *prima* facie case of discrimination or establish pretext.

For the reasons set forth above and detailed below, Capsugel respectfully requests that the Court grant it summary judgment on Rivaplata's LAD claim.

## II.     STATEMENT OF FACTS

The material facts relevant to Capsugel's motion are set forth in separately numbered paragraphs in Capsugel's Statement of Undisputed Material Facts ("Capsugel's SOF") (D.E. 76). Pursuant to the Court's order (D.E. 80), Capsugel also refers to Plaintiffs' Response to Defendant's Statement of Undisputed Material Facts ("Plaintiffs' SOF") (D.E. 78) and Plaintiffs' Supplemental Statement of Disputed Material Facts ("Plaintiffs' Supplemental SODF") (D.E. 79). Additionally, the deposition excerpts and exhibits relied upon by Capsugel and referenced herein are contemporaneously submitted to the Court as part of Capsugel's Appendix in Support of its Motion

for Summary Judgment.³ In the interest of brevity, these facts will not be repeated herein; however, many of these facts will be referred to in the argument section of this brief.

### III. ARGUMENT & AUTHORITIES

**A. Summary Judgment On Rivaplata's LAD Claim Is Proper Because Rivaplata Was Not An Employee Of Capsugel And Because Capsugel Did Not Refuse To Contract With Rivaplata.**

Rivaplata's LAD claim fails because (1) he was not an employee of Capsugel, and (2) Rivaplata and CPM never contracted with Capsugel, nor did Capsugel refuse to contract with Rivaplata because of his national origin as suggested in Plaintiffs' letter to the Court in opposition to Capsugel's request for leave to file its motion for summary judgment (D.E. 77).⁴ Additionally, even if Rivaplata was considered a Capsugel employee, there is no evidence supporting Rivaplata's *prima facie* case of discrimination or pretext as required under section 10:5-12(a).

**1. Capsugel Is Not Liable To Rivaplata Under N.J.S.A. § 10:5-12(a) Because Capsugel Never Employed Rivaplata Or Contracted With Him.**

Contrary to Rivaplata's previous assertions that he should be considered a Capsugel employee,⁵ Rivaplata cannot successfully assert a claim of discrimination under N.J.S.A. § 10:5-12(a) because Capsugel never employed or contracted with Rivaplata. Rather, Capsugel engaged a staffing firm, Robert Half, who entered into an agreement with CPM under which Rivaplata would provide services to Capsugel. (Capsugel's SOF at ¶¶ 3-6; App. 009-011, 014-018, Nuggehalli Dep. at 17:2-19:20, 22:21-24:1, 35:20-51:1; App. 038-039, 041-42, Rivaplata Dep. at

---

³ Citations in the form "App." followed by a number refer to the consecutively paginated pages of the accompanying appendix.

⁴ Notably, in Plaintiffs' response to Capsugel's motion for summary judgment (D.E. 53), Rivaplata previously urged the Texas district court to find that he was an employee for purposes of the LAD, and agreed that "New Jersey court decisions have held that the LAD is not available to independent contractors." (D.E. 53 at p. 5). Despite this admission, Capsugel will address Rivaplata's new argument that he is protected by section 10:5-12(l).

⁵ *See* Plaintiffs' Response to Capsugel's Motion for Summary Judgment (D.E. 53).

17:22-21:8, 29:12-30:11, 31:18-32:7; App. 065-068, Nuggehalli Deposition Exhibit 6 ("Capsugel's Agreement"); App 070-80, CPM's Agreement). Not only was Rivaplata not an employee of Capsugel, he was an independent contractor of Robert Half assigned to Capsugel as evidenced by the relevant contracts between CPM and Robert Half and between Capsugel and Robert Half. (App. 049, Rivaplata Dep. at 60:9-61:2; App. 065-068, Capsugel's Agreement; App 070-080, CPM's Agreement). No contracts between CPM and Capsugel or between Rivaplata and Capsugel exist. (*Id.*).

The LAD's explicit language in section 10:5-12(a) provides that its statutory proscriptions apply only to the acts of an *employer*. N.J.S.A. § 10:5-12(a) (stating that "[i]t shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination, for an employer" to engage in statutorily proscribed conduct). Put another way, a section 10:5-12(a) action lies against, and only against, the employer. Independent contractor plaintiffs cannot pursue discrimination claims under section 10:5-12(a) of the LAD. *Chrisanthis v. Cty. of Atl.*, 361 N.J. Super. 448, 454-55 (App. Div. 2003) (*citing Pukowsky v. Caruso*, 312 N.J. Super. 171, 180 (App. Div. 1998)); *see also Carney v. Dexter Shoe Co.*, 701 F. Supp. 1093, 1098 (D.N.J. 1988) ("Because the proscriptions [of the LAD] apply to an 'employer,' – as they do under the terms of [the] ADEA – it is inescapable that the 'individual' on the receiving end of the employer's conduct must be an employee or prospective employee in order for the statutes to apply"). In interpreting this provision, the New Jersey Appellate Division found "independent contractors are not to be considered 'employees' within the meaning of the LAD section 10:5-12(a), and are therefore not entitled to avail themselves of its protections." *Pukowsky*, 312 N.J. Super. at 180.

New Jersey courts have routinely found that individuals, similar to Rivaplata, were independent contractors, not employees for purposes of establishing liability under the LAD by

utilizing the *Pukowsky* twelve-factor test.[6]  For example, in *Rubin v. Chilton*, 359 N.J. Super. 105 (App. Div. 2003), the Appellate Division affirmed the trial court's finding that the plaintiff doctors, who had contracts directly with the defendant hospital and provided pathology services at the hospital for over 25 years, were independent contractors under the LAD and thus could not pursue claims of wrongful termination based upon their age in violation of section 10:5-12(a).  Similarly, in *Pukowsky*, the Appellate Division affirmed the dismissal of the appellant skating coach's claims under the LAD finding that she was an independent contractor, not an employee of the skating rink where appellant held her lessons.  *Pukowsky*, 312 N.J. Super. 171 at 183; *see also Limbeck v. Cty. of Cumberland*, No. 03-5816 (JBS), 2006 U.S. Dist. LEXIS 64383, at *26-27 (D.N.J. Sep. 8, 2006) (dismissing plaintiff's claims under Title VII and the LAD holding that plaintiff was an independent contractor, not an employee of the County).

Here, CPM was an independent contractor for Robert Half and provided services to Capsugel through Robert Half. (Capsugel's SOF at ¶¶ 5-6; App. 011, Nuggehalli Dep. at 22:21-24:1; App. 038-039, 041-042, Rivaplata Dep. at 17:22-21:8, 29:12-30:2, 31:18-32:7; App. 071, 078-080, CPM's Agreement at p. 2, 9-11).  As evidenced by the parties' respective contracts with Robert Half, Rivaplata's deposition testimony, and Muralidhar Nuggehalli's ("Nuggehalli")[7] deposition testimony, the parties did not intend to establish a direct employment or contractual

---

[6] This test requires a review of the following factors: (1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation--supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer;" (10) whether the worker accrues retirement benefits; (11) whether the "employer" pays social security taxes; and (12) the intention of the parties.  *See Pukowsky*, 312 N.J. Super. at 178; *see also D'Annunzio v. Prudential Ins. Co. of Am.*, 192 N.J. 110, 123 (2007)

[7] As explained in Capsugel's SOF, Nuggehalli was Rivaplata's point of contact and supervisor during his assignment with Capsugel. (Capsugel's SOF at ¶ 7; App. 038-039, Rivaplata Dep. at 17:14-18).  Nuggehalli, similar to Rivaplata, was born in a different country – India – and later became an American citizen. (Capsugel's SOF at ¶¶ 2, 3; App. 008, Nuggehalli Dep. at 12:3-13:20; App. 043, 053, Rivaplata Dep. at 36:25-37:11, 76:11-24; Plaintiffs' Second Amended Complaint at ¶ 6).

relationship between CPM and Capsugel or between Rivaplata and Capsugel. (Capsugel's SOF at ¶¶ 2-6; App. 009-011, 013-018, Nuggehalli Dep. at 17:2-19:20, 22:1-24:1, 33:23-34:5, 35:20-51:1; App. 060-063, Nuggehalli Deposition Exhibit 5 ("SOW Emails"); App. 065-068, Capsugel's Agreement; App. 038-039, 040-042, 049, Rivaplata Dep. at 17:22-21:8, 25:19-29:11, 30:3-11, 31:18-32:7, 60:9-61:2; App. 070-080, CPM's Agreement).

Rivaplata, by and through his company CPM, entered into a subcontractor services agreement with Robert Half to provide specific services, those of Rivaplata, to Robert Half's client, Capsugel. (Capsugel's SOF at ¶¶ 5-6; App. 011, Nuggehalli Dep. at 22:21-24:1; App. 038-039, 040-042, Rivaplata Dep. at 17:22-21:8, 25:19-30:11, 31:18-32:7; App. 070-080, CPM's Agreement). Similarly, Capsugel entered into its own separate agreement with Robert Half to receive services from Robert Half's subcontractor, CPM. (Capsugel's SOF at ¶ 4; App. 014-018, Nuggehalli Dep. at 35:20-51:1; App. 060-063, SOW Emails; App. 065-068, Capsugel's Agreement). These contracts clearly establish that an independent contractor relationship between Robert Half and Plaintiffs, and a separate relationship between Robert Half and Capsugel.

Additionally, it is clear that Rivaplata was a Robert Half independent contractor because CPM's Agreement contained mutually bargained-for and agreed-upon terms between CPM and Robert Half, including details about the Work Schedule. (Capsugel's SOF at ¶¶ 5-6; App. 011, Nuggehalli Dep. at 22:21-24:1, App. 038-039, 040-042, Rivaplata Dep. at 17:22-21:8, 25:19-30:11, 31:18-32:7; App. 071 CPM's Agreement). Rivaplata had not previously provided services to Capsugel, and both Capsugel's Agreement and CPM's Agreement established that Rivaplata would provide services for a specified time period. (Capsugel's SOF at ¶¶ 4, 6; App. 040-042, Rivaplata Dep. at 25:19-29:11, 31:14-24; App. 065-068, Capsugel's Agreement; App. 077, CPM's Agreement at p. 8). Both agreements also contain provisions establishing that the contracts could

be terminated at any time. (Capsugel's SOF at ¶¶ 4, 6; App. 042, Rivaplata Dep. at 30:3-11; App. 071, CPM's Agreement at p. 2; App. 065-068, Capsugel's Agreement). Capsugel abided by the terms of its Agreement with Robert Half and, when the three month contract period came to an end, Capsugel determined it did not need to extend its agreement with Robert Half. (Capsugel's SOF at ¶¶ 4, 9-11; App. 017, 020, Nuggehalli Dep. at 46:2-16, 58:5-60:11). At the time Capsugel's Agreement concluded, CPM's Agreement with Robert Half was still in effect because of the longer contract time period. To that end, it was Robert Half and CPM's decision to either find another assignment for CPM or terminate their contract. Additionally, Robert Half billed Capsugel for Rivaplata's time worked at Capsugel and then paid Rivaplata in accordance with the terms of CPM's Agreement. (Capsugel's SOF at ¶¶ 4, 6; App. 040-042, 046, Rivaplata Dep. at 25:19-30:11, 48:19-49:25; App. 065-068, Capsugel's Agreement; App. 070-080, CPM's Agreement). Therefore, summary judgment on Rivaplata's claim under section 10:5-12(a) is appropriate because there was no employment relationship between Rivaplata and Capsugel.

> **2. Rivaplata's Discrimination Claim As An Independent Contractor Under N.J.S.A. § 10:5-12(l) Also Fails Because He Has No Competent Evidence That Capsugel Refused To Do Business With Him Because Of His Nationality.**

Although Rivaplata previously argued that he was a Capsugel employee, despite the clear language of CPM's Agreement to the contrary, and asserted that he could establish a *prima facie* case of discrimination,[8] Rivaplata now also claims that he was discriminated against as an independent contractor under section 10:5-12(l). He claims he was discriminated against when Capsugel allegedly refused to contract or otherwise do business with him on the basis of his nationality in violation of the LAD. While the LAD does provide a limited avenue of relief for

---

[8] *See* Plaintiffs' Second Amended Complaint at ¶¶ 15-16, 21 (D.E. 19) and Plaintiffs' Response to Capsugel's Motion for Summary Judgment (D.E. 53 at p. 5).

individuals who are properly classified as independent contractors under section 10:5-12(l), this claim similarly fails because Capsugel never had a contract with Rivaplata, and there is no competent evidence that Capsugel refused to do business with Rivaplata on the basis of his nationality.

Independent contractors are afforded protection under another provision of the LAD – N.J.S.A. § 10:5-12(l). This provision prohibits an individual or entity from refusing to, among other things, "contract with" or "do business with" any person based on a protected characteristic. *Id.* In other words, this provision of the LAD prohibits discrimination in a business-to-business setting. *See Rubin v. Chilton*, 359 N.J. Super. 105, 111 (App. Div. 2003). Here, Rivaplata's claim fails for two reasons. First, Rivaplata and his company, CPM, never contracted with Capsugel, and second, aside from his subjective beliefs, there is no evidence that Capsugel refused to "contract with" Rivaplata or otherwise "do business with" him.

As discussed above, CPM's and Capsugel's separate agreements establish the terms of the parties' respective relationships with Robert Half. (Capsugel's SOF at ¶¶ 4-6; App. 011, 014-018, Nuggehalli Dep. at 22:21-24:1, 35:20-51:1; App. 038-039, 041-042, 049, Rivaplata Dep. at 17:22-21:8, 25:19-32:7, 60:9-61:2; App. 060-063, SOW Emails; App. 065-068, Capsugel's Agreement; App. 070-080, CPM's Agreement). Capsugel did not terminate its own contract with Robert Half or have any control over CPM's Agreement. (Capsugel's SOF at ¶¶ 9-10; App. 017, 020, 022, Nuggehalli Dep. at 46:2-16, 58:5-60:11, 66:6-67:19; App. 082-086, Nuggehalli Deposition Exhibits 12 and 13 – Emails Between Chavers at Robert Half and Nuggehalli Regarding an End Date for Rivaplata's Assignment). Instead, Capsugel completed its three-month contract term and made the business decision that its pre-existing IT team could handle the maintenance of the deliverables moving forward. (Capsugel's SOF at ¶ 11; App. 019-020, Nuggehalli Dep. at 57:8-

20, 58:5-15). Rivaplata has no evidence of discrimination, but instead relies upon his subjective belief about alleged discriminatory comments, for which he has no witnesses to corroborate these allegations. (Plaintiffs' Supplemental SODF at ¶ 15). There is simply no factual basis for Rivaplata's claim that Capsugel refused to contract with him or otherwise refused to do business with him because of his nationality. As a result, summary judgment is appropriate on Rivaplata's discrimination claim under section 10:5-12(l).

**B.  Even If Rivaplata Was An Employee of Capsugel, His Discrimination Claim Fails Because He Cannot Establish A *Prima Facie* Case of Discrimination.**

In the event the Court finds that Rivaplata was an employee of Capsugel, then his LAD claim still fails because he cannot establish a *prima facie* case of discrimination. Furthermore, Capsugel had a legitimate, non-discriminatory reason for choosing not to extend its contract with Robert Half, and Rivaplata cannot establish that this reason was pretext for discrimination.

### 1.  Legal Framework For Analyzing Rivaplata's Discrimination Claim.

Claims under section 10:5-12(a) are analyzed under the *McDonnell Douglas* burden-shifting framework, in which Rivaplata must first demonstrate a *prima facie* case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Dixon v. Rutgers, The State Univ. of New Jersey*, 110 N.J. 432, 442 (1988); *El-Sioufi v. St. Peter's Univ. Hospital*, 382 N.J. Super. 145, 166 (App. Div. 2005). In order to establish a *prima facie* case of discrimination, Rivaplata must demonstrate that: (1) he belongs to a protected class; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) others not within his protected class did not suffer similar adverse employment actions. *J.S. v. Borough of Englewood Cliffs*, No. A-5938-12T1, 2015 N.J. Super. Unpub. LEXIS 1151, at *22-23 (N.J. App. Div. May 18, 2015).

If Rivaplata is able to establish a *prima facie* case of discrimination, he must further demonstrate that Capsugel's proffered reason for taking an adverse employment action was not the real reason for the adverse employment action. In short, Rivaplata must demonstrate that discriminatory animus was the true reason for the adverse employment action. *See McDonnell Douglas*, 411 U.S. at 792; *Dixon*, 110 N.J. at 442; *El-Sioufi*, 382 N.J. Super. at 166. "To prove pretext . . . , a plaintiff must do more than simply show that the [defendant's] proffered legitimate, non-discriminatory reason was false; he or she must also demonstrate that the [defendant] was motivated by discriminatory intent." *Fulton v. Sunhillo Corp.*, No. A-2021-11T4, 2013 N.J. Super. Unpub. LEXIS 2770, at *20-22 (App. Div. Nov. 18, 2013). Therefore, it is Rivaplata's burden to identify competent evidence that Capsugel's legitimate, non-discriminatory reasons for choosing not to extend his assignment were pretextual. Stated another way, Rivaplata's discrimination claim must be dismissed unless there is competent evidence from which a reasonable factfinder could determine that discriminatory animus "played a role in the decision making process and that it had a determinative influence on the outcome of that process." *Beatty v. Farmer*, 366 N.J. Super. 69, 77 (App. Div. 2004) (citing *Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 207 (1999)).

Notably, it is not enough to show that the employer made a 'wrong or mistaken' decision. *Fulton*, 2013 N.J. Super. Unpub. LEXIS 2770, at *21. Rather, the plaintiff must uncover 'weaknesses, implausibilities, inconsistences, incoherencies, or contradictions' in the employer's explanation that would allow a reasonable factfinder to believe that the employer did not truly act for the asserted reason." *Greenberg v. Camden Cty. Vocational and Technical Schools*, 310 N.J. Super 189, 200 (App. Div. 1998); *see also DeMoss v. The ARC of Somerset County*, NO. A-2927-13T4, 2015 N.J. Super. Unpub. LEXIS 278, at *17 (App. Div. Feb. 17, 2015) (affirming summary judgment dismissing age and race discrimination claims "based only on speculation" because

"defendants articulated a legitimate, non-discriminatory reason for plaintiff's termination [and] plaintiff failed to sustain her burden of pretext by producing evidence that discrimination was more likely than not a motive or determining cause for her discharge").

### 2. Rivaplata Cannot Establish A *Prima Facie* Case Of Discrimination.

Here, Rivaplata cannot establish a *prima facie* case of discrimination because Capsugel did not take an adverse employment action against Rivaplata and because he cannot identify any similarly situated individuals who were treated more favorably. First, Capsugel acted within the terms of its agreement with Robert Half when deciding not to extend its contract for Rivaplata's services, and it did not take an adverse employment action against him because it believed the parties' respective agreements with Robert Half mutually ended after three months. (Capsugel's SOF at ¶¶ 4, 9, 12; App. 017, 019-020, Nuggehalli Dep. at 46:2-16, 57:8-20, 58:5-60:11; App. 047, Rivaplata Dep. at 50:6-11; App. 065-068, Capsugel's Agreement). Rivaplata's allegation that Capsugel intentionally terminated its agreement with Robert Half so that it could transition the work to the IT team, who allegedly had cheaper rates than Rivaplata, is based on nothing more than rank speculation.[9] Capsugel did not terminate its agreement with Robert Half. (Capsugel's SOF at ¶¶ 9-10; App. 017-020, 022, Nuggehalli Dep. at 46:2-16, 58:5-60:11, 66:6-67:19). To the contrary, it completed the contracted time period, and it had no way of knowing the terms of CPM's Agreement or that Robert Half would not place Rivaplata with another client for the duration of CPM's Agreement with Robert Half. (Capsugel's SOF at ¶¶ 4, 6, 9-10; App. 017-020, 022, Nuggehalli Dep. at 46:2-16, 58:5-60:11, 66:6-67:19; App. 065-068, Capsugel's Agreement; App. 077, CPM's Agreement at p. 8).

---

[9] This, of course, would not even be a discriminatory reason.

Next, Rivaplata cannot identify any person similarly situated who was treated more favorably under the same contractor relationship/situation. Rivaplata claims that the pre-existing IT team, comprised of three contractors of Indian descent, were treated more favorably than he was because they maintained their assignments with Capsugel after Rivaplata had completed his deliverables. (Plaintiffs' Second Amended Complaint at ¶ 20 (D.E. 19)). However, these individuals are not similarly situated because they were part of a pre-existing support team who were contracted through Capsugel's two main vendors well before Rivaplata's assignment began. (Capsugel's SOF at ¶ 8; App. 009, 011, 013, Nuggehalli Dep. at 16:25-17:11, 23:22-25:9, 32:2-10). Stated differently, none of the identified individuals were brought on for a limited project and period of time like Rivaplata. They, therefore, are not proper comparators for purposes of assessing Rivaplata's discrimination claim. Further, to the extent Rivaplata alleges that these individuals, and others of Indian descent, were treated more favorably under their contractor relationship, there is no evidence, other than Rivaplata's subjective observations, to support that contention.

3.  **Rivaplata's LAD Claim Fails Because He Cannot Establish Pretext.**

In regards to Rivaplata's pretext argument, his claim fails because he cannot establish that Capsugel's stated reason for choosing not to extend its contract with Robert Half was false. Specifically, Capsugel employees, Nuggehalli and Senior Director of Global Applications, Danny Dupont ("Dupont"), engaged Robert Half in order to find a contractor who could provide a specific skillset and the services by the June/July 2017 deadlines. (Capsugel's SOF at ¶¶ 2-3; App. 010-011, 013-015, Nuggehalli Dep. at 17:2-19:20, 22:21-23:10, 33:23-34:5, 35:20-38:17). After conducting interviews, Nuggehalli determined that he thought Rivaplata was the most qualified candidate for the position. (Capsugel's SOF at ¶¶ 3-4; App 013-018, Nuggehalli Dep. at 33:23-

51:1; App. 039, 042, Rivaplata Dep. at 18:16-20:7, 32:8-33:11). Capsugel then entered into its contract with Robert Half, which stated that Rivaplata's assignment would last approximately three months. (Capsugel's SOF at ¶ 4; App. 065-068, Capsugel's Agreement). When the three-month period came to a close, Nuggehalli and Dupont determined that Rivaplata's deliverables were completed and transferred the maintenance of the deliverables to the pre-existing IT team. (Capsugel's SOF at ¶¶ 9, 11; App. 019-020, Nuggehalli Dep. at 57:8-20, 58:5-60:11). Rivaplata has no evidence to establish that Capsugel's contract was for six months or that the reason for not extending its contract was pretext for discrimination; therefore, summary judgment is appropriate.

## IV.   CONCLUSION

Based upon the foregoing, Capsugel respectfully requests that summary judgment be granted on Rivaplata's LAD claim.

DATED: January 6, 2020                              Respectfully submitted,

*/s/* James M. McDonnell
James M. McDonnell (Bar ID #030572001)
**JACKSON LEWIS P.C.**
200 Connell Drive, Suite 2000
Berkeley Heights, New Jersey 07922
Telephone: 908-795-5200
Facsimile: 908-464-2614
James.McDonnell@jacksonlewis.com

Talley R. Parker
Texas Bar No. 24065872
(Admitted *Pro Hac Vice*)
Melanie Uremovich
Texas Bar No. 24106538
(Admitted *Pro Hac Vice*)
**JACKSON LEWIS P.C.**
500 N. Akard, Suite 2500
Dallas, Texas 75201
Telephone: 214-520-2400
Facsimile: 214-520-2008
Talley.Parker@jacksonlewis.com
Melanie.Uremovich@jacksonlewis.com

**ATTORNEYS FOR DEFENDANT CAPSUGEL US, LLC**

## **CERTIFICATE OF SERVICE**

    I certify that a copy of the foregoing document was served electronically on the following counsel of record for Plaintiffs CPM Consulting, LLC and Martino Rivaplata under Federal Rule of Civil Procedure 5 on January 6, 2020.

James W. Boyan III
jboyan@pashmanstein.com
Pashman Stein Walder Hayden
Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601

Steven E. Clark
sclark@dfwlaborlaw.com
Clark Firm PLLC
5445 La Sierra Drive, Suite 415
Dallas, Texas 75231

                                                  */s/* James M. McDonnell_____
                                                  James M. McDonnell