PASHMAN STEIN WALDER HAYDEN
A Professional Corporation
James W. Boyan III
Court Plaza South
21 Main Street, Suite 200
Hackensack, New Jersey 07601
(201) 488-8200
jboyan@pashmanstein.com
Attorneys for Plaintiffs
Martino Rivaplata and CPM Consulting LLC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARTINO RIVAPLATA and CPM CONSULTING LLC<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>CAPSUGEL US, LLC,<br><br>　　　　　Defendant. | Civil Action No. 19-cv-16579 |

---

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

---

Of Counsel and on the Brief:
James W. Boyan III
Howard Pashman

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 2

    A.  Martino Rivaplata Has Extensive Experience in the IT Industry ........................................ 2

    B.  Robert Half Recruited Rivaplata to Work on a Six Month Plus Project at Capsugel .......... 2

    C.  Capsugel Advised Rivaplata the Project Would Last for Six Months to One Year ............. 3

    D.  Capsugel Engaged Rivaplata to Work on the Project ........................................................ 3

    E.  Capsugel Treated Rivaplata as an Employee Under the LAD ........................................... 3

    F.  Capsugel Subjected Rivaplata to National Origin Discrimination ...................................... 4

    G.  Capsugel Abruptly Terminated Rivaplata's After Three Months ...................................... 4

ARGUMENT ........................................................................................................................... 5

    I.  SUMMARY JUDGMENT IS NOT APPROPRIATE ....................................................... 5

    II.  CAPSUGEL TERMINATED RIVAPLATA'S EMPLOYMENT DUE TO HIS NATIONAL ORIGIN ..................................................................................................... 6

        A.  Rivaplata was Capsugel's Employee Under the LAD .................................................. 6

        B.  Rivaplata Can Establish a Prima Facie Case of National Origin Discrimination ........ 7

        C.  Capsugel's Proffered Reason was a Pretext for Discrimination .................................. 9

    III.  ALTERNATIVELY, EVEN IF RIVAPLATA WAS NOT AN EMPLOYEE, A REASONABLE JURY COULD FIND THAT CAPSUGEL REFUSED TO DO BUSINESS WITH HIM BECAUSE OF HIS NATIONALITY ....................................... 11

CONCLUSION ....................................................................................................................... 13

# **TABLE OF AUTHORITIES**

Page(s)

**Cases:**

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144 (1970) .................................................................................................. 11

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................... 9, 11

*Carney v. Dexter Shoe Co.*,
  701 F.Supp. 1093 (D.N.J. 1988) ............................................................................... 11

*Chrisanthis v. Cnty. of Atlantic*,
  361 N.J. Super. 448 (App. Div. 2003) ...................................................................... 11

*Clowes v. Terminix Int'l, Inc.*,
  109 N.J. 575 (1988) ................................................................................................... 12

*Ezold v. Wolf, Block, Schorr & Solis–Cohen*,
  983 F.2d 509 (3d Cir.1992) ....................................................................................... 13

*Franz v. Raymond Eisenhardt & Sons, Inc.*,
  732 F. Supp. 521 (D.N.J. 1990) ................................................................................ 10

*Fuchilla v. Layman*,
  109 N.J. 319 (1988) ................................................................................................... 10

*Fuentes v. Perskie*,
  32 F.3d 759 (3d Cir. 1994) ........................................................................................ 13

*Goodman v. Mead Johnson & Co.*,
  534 F.2d 566 (3d Cir. 1976) ........................................................................................ 9

*J.T.'s Tire Serv., Inc. v. United Rentals N. Am., Inc.*,
  411 N.J. Super. 236 (App. Div. 2010) ................................................................. 15, 17

*Jackson v. Univ. of Pittsburgh*,
  826 F.2d 230 (3d Cir. 1987) ........................................................................................ 9

*Marino v. Indus. Crating Co.*,
  358 F.3d 241 (3d Cir. 2004) ...................................................................................... 11

*Marzano v. Computer Science Corp., Inc.*,
   91 F.3d 497 (3d Cir. 1996) .................................................................................................. 12

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ............................................................................................................ 12

*Nini v. Mercer Cnty. Cmty. Coll.*,
   202 N.J. 98 (2010) ............................................................................................................... 10

*Perlowski v. Elson T. Killam Assocs., Inc.*,
   384 N.J. Super. 467 (Law Div. 2005) .................................................................................. 15

*Pukowsky v. Caruso*,
   312 N.J. Super. 171 (App. Div. 1998) .................................................................................. 10

*Rubin v. Chilton*,
   359 N.J. Super. 105 (App. Div. 2003) ............................................................................ 15, 16

*Victor v. State*,
   203 N.J. 383 (2010) ....................................................................................................... 12, 15

*Zive v. Stanley Roberts, Inc.*,
   182 N.J. 436 (2005) ............................................................................................. 10, 12, 15

**Statutes:**

*N.J.S.A.* 10:5-12(a) ................................................................................................................ 10, 15

*N.J.S.A.* § 10:5-12(l) ...................................................................................................... 15, 16, 17

**Rules:**

Fed. R. Civ. P. 56 .......................................................................................................................... 9

Plaintiffs Martino Rivaplata and CPM Consulting, LLC ("CPM" collectively, "Plaintiffs") respectfully submit the following brief in opposition to Defendant Capsugel US LLC's ("Capsugel" or "Defendant") motion for summary judgment as to all counts. (Dkt. No. 81).

## PRELIMINARY STATEMENT

Capsugel argues in favor of summary judgment by mischaracterizing the New Jersey Law Against Discrimination ("LAD") and ignoring many disputed material facts that make summary judgment improper. As explained below, the record contains ample evidence that would allow a reasonable jury to conclude that Capsugel terminated Rivaplata because of his national origin. Defendant claims that Rivaplata was not an employee under the LAD but Plaintiffs have sufficient evidence for a reasonable jury to conclude that he was an employee. Alternatively, even if this Court concludes that Rivaplata was not Capsugel's employee, there is ample evidence that Defendant refused to continue to do business with him because of his nationality. Since the record supports a jury finding for Rivaplata on either of these theories of discrimination Capsugel's motion must be denied.

Capsugel suggests that Rivaplata raises a "new argument" when he claims that, regardless of whether he is an employee, Capsugel's refusal to deal with him constitutes discrimination under the LAD. (Br. at 3 n. 4). However, that argument is not new. Plaintiffs alleged in the Second Amended Complaint that the LAD prohibits "discrimination in any job-related action … The statute also prohibits unlawful discrimination in business contracts." (2d Amd. Cmplt. ¶ 19, Dkt. No. 19). Plaintiffs thus alleged that Capsugel discriminated against Rivaplata both in the employment context and in its refusal to do business with him, and the record now establishes that Capsugel is not entitled to summary judgment on either theory.

1

**STATEMENT OF FACTS**

    A.    **Martino Rivaplata Has Extensive Experience in the IT Industry**

Plaintiff Martino Rivaplata is an information technology ("IT") professional and a U.S. citizen. (Deposition of Martino Rivaplata ("Rivaplata Dep.") 76:11-24 attached to the Certification of James W. Boyan III ("Boyan Cert.") as Exhibit A). Rivaplata is sole member of Plaintiff CPM Consulting, LLC ("CPM"). He uses that entity to perform IT consulting services. (Declaration of Martino Rivaplata ("Rivaplata Decl.") at ¶ 3). Rivaplata has extensive experience working in the IT industry principally on projects lasting six months or more. (Id. at ¶ 4). In his 20 years of experience in the industry, when a contract has called for an assignment of six months plus, the assignments have always lasted for more than six months and usually for about 12 months. (Rivaplata Dep. 30:12-22; 38:23-40:1; 57:12-22).

    B.    **Robert Half Recruited Rivaplata to Work on a Six Month Plus Project at Capsugel**

On March 28, 2017, Barry Cormier, a recruiter at Robert Half, called Rivaplata to discuss an opportunity at Capsugel. (Id. at ¶ 5). He informed Rivaplata that Capsugel was seeking a Senior SAP Native HANA Data Modeler with experience in both HANA and BPC (the "Project"). (Id). Cormier advised that that the Project would last longer than six months and could "easily" last up to one year. (Rivaplata Dep. 30:12:22, App 015). Rivaplata was exploring several opportunities with similar project lengths at that time but he was intrigued by the Project because it would utilize his skills in HANA and BPC. (Rivaplata Decl. ¶ 6). After Rivaplata expressed interest in the Project, Cormier arranged for Rivaplata to have a phone interview with Capsugel. (Id.).

2

      **C.**     **Capsugel Advised Rivaplata the Project Would Last for Six Months to One Year**

On March 29, 2017, Rivaplata had a telephone interview with Muralidhar Nuggehalli, the head of Capsugel's Finance and Reporting Applications Department. (Id. at ¶ 7). During that call, Nuggehalli advised Rivaplata there was "tons of work" and that the Project would last from six months to one year. (Rivaplata Dep. 33:12-18, 34:11-15, 78:12-14). The witnesses all agree that Nuggehalli **did not** advise Rivaplata that the Project was only expected to last three months. (Id., Deposition of Muralidhar Nuggehalli ("Nuggehalli Dep.") 43:11-44:24, Boyan Cert., Ex. B). Rivaplata would not have accepted the position if anyone had told him that the Project would last for only three months. (Rivaplata Decl. ¶ 7).

      **D.**     **Capsugel Engaged Rivaplata to Work on the Project**

After Capsugel selected Rivaplata to work on the Project, CPM and Rivaplata entered into agreements with Robert Half concerning the Project. (Id. at ¶ 9). The agreement between Robert Half and CPM listed an Expected Project Length of "six months +." (Robert Half Technology Subcontractor Service Agreement ("Robert Half Agreement"), Boyan Cert. Ex. C).

In reliance upon Capsugel's representations about the length of the Project, Rivaplata relocated from Dallas, Texas to Morristown, New Jersey and rented an apartment in Morristown with a one-year lease at an apartment complex recommended by one of his co-workers at Capsugel. (Rivaplata Dep. 57:5-9). On April 3, 2017, Rivaplata began working at Capsugel's facility in Morristown. (Rivaplata Decl. ¶ 12).

      **E.**     **Capsugel Treated Rivaplata as an Employee Under the LAD**

Capsugel required Rivaplata to perform all of his work at its facility, directed all of the details of his work, and required him to attend multiple progress meetings each day. (Id. at ¶¶ 18-20). Capsugel gave Rivaplata detailed instructions for all of the tasks he was assigned to perform,

3

closely controlled and supervised all of his work, and monitored his job performance. (Id. at ¶ 21). In addition, Rivaplata was required to record all of his hours worked in Capsugel's timekeeping system which Capsugel had to approve before he was paid. (Id. at ¶ 22).

### F. Capsugel Subjected Rivaplata to National Origin Discrimination

All of the individuals Rivaplata worked with on a day-to-day basis at Capsugel were of Indian descent. (Rivaplata Dep. 23:18-24:4). Rivaplata was the only American worker on the HANA team. (Rivaplata Decl. ¶ 14, Rivaplata Dep. 83:18-84:11). In addition, the vast majority of workers at Capsugel's Morristown facility were of Indian descent. (Rivaplata Dep. 83:18-85:16). Nuggehalli is of Indian ancestry and initially came to the U.S. on an H1b visa. (Nuggehalli Dep. 12:3-12:15).

On two separate occasions, Capsugel subjected Rivaplata to discriminatory comments based on his national origin and purposefully excluded him from team meetings due to his national origin. On both occasions, Rivaplata was told to leave team meetings because they were "all-Indian" meetings. (Rivaplata Dep. 86:2-87:3). Nuggehalli, who was present at both meetings, failed to stop or address these blatant acts of national origin discrimination.

### G. Capsugel Abruptly Terminated Rivaplata's After Three Months

In mid-June 2017, Capsugel summarily terminated Rivaplata. (Rivaplata Dep. 54:1-55:19, Rivaplata Decl. ¶¶ 14-15). Nuggehalli directed him to transition his remaining work to the three Indian nationals on his team. (Nuggehalli Dep. 57:8-58:13, Nuggehalli Dep. Ex., 9 Knowledge Transfer Meeting Calendar Invite, Plaintiffs' App. 55-56, Nuggehalli Dep. 83:10-86:5, Nuggehalli Dep. Ex. 17, 18, Plaintiffs' App. 80-87).

Rivaplata was stunned when his assignment with Capsugel was terminated after only three months. (Rivaplata Dep. 55:7-19). At the time of his termination, there was a lot more work to be

4

done on the Project. (Rivaplata Decl. Dkt. No. 54, ¶ 16). When Rivaplata advised Cormier, that his assignment had been terminated Cormier was shocked and confirmed that the Project was for "six months plus." (Rivaplata Dep. 55:20-56:10).

## ARGUMENT

### I. SUMMARY JUDGMENT IS NOT APPROPRIATE

A party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law of the suit determines if a fact is material. *Jackson v. Univ. of Pittsburgh*, 826 F.2d 230, 232 (3d Cir. 1987) (stating that a fact is material if it "'might affect the outcome of the suit under the governing law.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), *cert. denied*, 484 U.S. 1020 (1988). A dispute over such facts is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In addition,

> [i]nferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion. The non-movant's allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt.

*Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) (footnote omitted) *cert. denied* 429 U.S. 1038 (1977). Summary judgment is also inappropriate where there is any dispute over the significance of particular evidence. *Anderson*, 477 U.S. at 250 (noting the similarity between a motion for summary judgment and a motion for directed verdict and stating in the context of summary judgment that "[i]f reasonable minds could differ as to the import of the evidence, … a verdict should not be directed.") Consequently, summary judgment is proper only when, after resolving inferences in the non-movant's favor, the governing law permits "but one reasonable conclusion as to the verdict." *Id*.

5

## II. CAPSUGEL TERMINATED RIVAPLATA'S EMPLOYMENT DUE TO HIS NATIONAL ORIGIN

The record contains ample evidence that Rivaplata was an employee under the LAD and that Capsugel terminated his employment because of his nationality. A reasonable jury could therefore find for Rivaplata and Capsugel's motion for summary judgment must be denied.

### A. Rivaplata was Capsugel's Employee Under the LAD

When interpreting the LAD, courts must bear in mind that it is "remedial legislation … [a]s such, it compels liberal construction in order to advance its beneficial purposes. Indeed, courts have found that the more broadly [the LAD] is applied the greater its antidiscriminatory impact." *Nini v. Mercer Cnty. Cmty. Coll.*, 202 N.J. 98, 115 (2010) (quotation and citation omitted). "'The overarching goal of the [LAD] is nothing less than the eradication 'of the cancer of discrimination.'" *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 446 (2005) (quoting *Fuchilla v. Layman*, 109 N.J. 319, 334 (1988)). To advance that far-reaching goal, the LAD prohibits employers from terminating employees because of the employees' race, nationality, or other protected status. *N.J.S.A.* 10:5-12(a). There are twelve factors to be considered when deciding whether an individual is an employee under the LAD:

> (1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation—supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer;" (10) whether the worker accrues retirement benefits; (11) whether the "employer" pays social security taxes; and (12) the intention of the parties.

*Pukowsky v. Caruso*, 312 N.J. Super. 171, 182-83 (App. Div. 1998) (citing *Franz v. Raymond Eisenhardt & Sons, Inc.*, 732 F. Supp. 521, 528 (D.N.J. 1990)). Rather than mandating a point-by-point accumulation of factors, the analysis requires a "principled application" that is supposed to account for a "'totality of the circumstances.'" *Id.* (quoting *Franz*, 732 F. Supp. at 528). As a result,

6

"'[w]here there exist several indicia of employee status, the mere presence or absence of two or three of them—without a reasoned balancing of the above factors—cannot dictate the outcome of a summary judgment motion.'" *Chrisanthis v. Cnty. of Atlantic*, 361 N.J. Super. 448, 456 (App. Div. 2003) (citing *Carney v. Dexter Shoe Co.*, 701 F.Supp. 1093, 1099 (D.N.J. 1988)).

The record contains sufficient evidence to allow a reasonable jury to conclude that Rivaplata was Capsugel's employee. That evidence includes:

- Capsugel controlled the nature of the work by determining its scope, technical requirements, and timing. (Rivaplata Decl. ¶ 18-22).
- Capsugel closely supervised his work by requiring multiple meetings every day to monitor his progress and to discuss the financial aspects of his work. (Id. ¶¶ 18-20).
- Capsugel provided the workplace and the equipment and required Rivaplata to perform his work at its facility. (Id. ¶ 18).
- Capsugel controlled when and how much Rivaplata was paid since the company had to approve all of his time before he could be paid. (Id. ¶ 22).

At the summary judgment stage, the Court must not weigh evidence or decide which party's submissions it will credit. *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004). Instead, the non-movant's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). Based on the evidence in the record, a reasonable jury could decide that Rivaplata was Capsugel's employee. Therefore, the Court should deny Capsugel's motion for summary judgment on the issue of whether Rivaplata was an employee under the LAD.

   **B.**  **Rivaplata Can Establish a Prima Facie Case of National Origin Discrimination**

Employment discrimination claims in New Jersey follow the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Victor v. State*, 203 N.J. 383, 408 (2010). First, the plaintiff must establish a prima facie case of discrimination. *Id*. The plaintiff's burden at that stage is the "'rather modest'" one of "'demonstrat[ing] to the court that plaintiff's factual scenario is compatible with discriminatory intent—i.e., that discrimination *could* be a reason for the employer's action.'" *Zive*, 182 N.J. at 447 (quoting *Marzano v. Computer Science Corp., Inc.*, 91 F.3d 497, 508 (3d Cir. 1996)) (emphasis in original). Rivaplata has only a rather modest burden of demonstrating that Capsugel could have terminated him because of his nationality.

There is no one-size-fits all prima facie case; every type of claim for employment discrimination under the LAD has its own prima facie elements. *Victor*, 203 N.J. at 408 (stating that "[t]here is no single prima facie case that applies to all employment discrimination claims.") To establish a prima facie case for wrongful termination,

> plaintiff must demonstrate: (1) that plaintiff is in a protected class; (2) that plaintiff was otherwise qualified and performing the essential functions of the job; (3) that plaintiff was terminated; and (4) that the employer thereafter sought similarly qualified individuals for that job.

*Id*. at 409 (citing *Clowes v. Terminix Int'l, Inc.*, 109 N.J. 575, 596–97 (1988)). "[T]he prima facie case is to be evaluated solely on the basis of the evidence presented by the plaintiff, irrespective of defendants' efforts to dispute that evidence." *Zive*, 182 N.J. at 448 (citations omitted). Moreover, the plaintiff can establish its prima facie case based on circumstantial evidence. *Id*. at 447 (citing *Marzano*, 91 F.3d at 502-03).

Rivaplata has set forth a prima facie case of national origin discrimination. He is a member of a protected class because his national origin (American) was different from all of the other individuals he worked with on a daily basis. (Rivaplata Decl. ¶ 2, 14, Rivaplata Dep. 83:18-84:11).

8

He had over 20 years of IT experience, fully performed all of the functions of the job, and received positive feedback on his work. (Rivaplata Decl. ¶¶ 4, 13, 15). He was terminated. (Id. at ¶ 16). Capsugel then required him to give all of his work to Indian contractors before departing. (Id. at ¶ 17, Nuggehalli Dep. 57:8-58:13, 83:10-86:5). Therefore, the record establishes Rivaplata's prima facie case of wrongful termination.

### C. Capsugel's Proffered Reason was a Pretext for Discrimination

Capsugel claims that it never terminated Rivaplata, but rather hired him only for three months and, when that time expired, did not sign another contract with him. (Br. at 11). However, the record contains extensive evidence demonstrating that Capsugel's proffered reason for Rivaplata's termination is "unworthy of credence." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) ("plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'") (citing *Ezold v. Wolf, Block, Schorr & Solis–Cohen*, 983 F.2d 509, 531(3d Cir.1992)).

- On two occasions, Rivaplata was told to leave a meeting because it was an "all-Indian" meeting. (Rivaplata Dep. 86:2-87:3).

- CPM's contract with Robert Half stated that the term would be "6 months +." (Robert Half Agreement, Boyan Cert. Ex. C).

- Barry Cormier, Rivaplata's contact at Robert Half, stated that the work would last more than 6 months and "easily" up to one year. (Rivaplata Dep. 30:12-22).

- In Rivaplata's 20 years of experience in the IT industry, when contracts state that an assignment will last for six months or longer, the assignments have always lasted more than six months and usually for a year. (Rivaplata Dep. 30:12-22, 38:23-40:1, 57:12-22).

9

- Nuggehalli, Rivaplata's supervisor at Capsugel, testified that he never told Rivaplata how long the Project would last. (Nuggehalli Dep. 43:11-44:24).

- Nuggehalli told Rivaplata that there was "tons of work" at Capsugel and the Project would last six months to a year. (Rivaplata Dep. 33:12-18, 34:11-15, 78:12-14).

- Based on Capsugel's representations about the length of the Project, Rivaplata relocated from Texas to New Jersey and signed a one-year lease in Morristown to work at Capsugel. (Rivaplata Dep. 57:5-9)

- After approximately three months, Capsugel abruptly terminated Rivaplata's employment. (Rivaplata Dep. 54:1-55:19, Rivaplata Decl. ¶¶ 14-15).

- There was a lot of work that remained on the Project. (Rivaplata Decl. ¶ 16).

- Nuggehalli directed Rivaplata to transition his work to contractors who were Indian nationals. (Nuggehalli Dep. 79:18-80:8).

In addition, Capsugel's contract with Robert Half did not have a definite three-month term as Capsugel's suggests. Instead, it was a contract for an indefinite term that could be terminated by either side upon 10 days-notice. The agreement does state that the "Estimated Assignment Duration" was three months but that does not mean that the contract automatically expired after three months. Instead, one of the parties had to take affirmative steps to terminate the contract. (See Statement of Work, ¶ 4) ("Either party may terminate this [agreement] at any time upon 10 days prior written notice to the other party.") The fact that Capsugel has misrepresented the terms of its contract with Robert Half and failed to acknowledge that it terminated the agreement after only two and a half months by itself is evidence of pretext.

Based on the weaknesses, implausiblities, inconsistencies, incoherencies, and contradictions in Capsugel's proffered reason a factfinder could rationally find it to be "unworthy

10

of credence." This evidence also highlights genuine disputes over material facts including, but not limited to, the length of the Project, the representations that Capsugel made to Rivaplata about the Project and the amount of work left to be done on the Project. These issues cannot be resolved at summary judgment. Therefore, Capsugel's motion should be denied.

### III. ALTERNATIVELY, EVEN IF RIVAPLATA WAS NOT AN EMPLOYEE, A REASONABLE JURY COULD FIND THAT CAPSUGEL REFUSED TO DO BUSINESS WITH HIM BECAUSE OF HIS NATIONALITY

*N.J.S.A.* § 10:5-12(l) makes it unlawful:

[f]or any person to refuse to buy from, sell to, lease from or to, license, contract with, or trade with, provide goods, services or information to, or otherwise do business with any other person on the basis of that person's nationality or other protected status.

As New Jersey's Appellate Division has explained, "*N.J.S.A.* 10:5-12(a) deals with workplace discrimination, *N.J.S.A.* § 10:5-12(l) addresses refusal to deal." *Rubin v. Chilton*, 359 N.J. Super. 105, 110 (App. Div. 2003). This distinction between workplace discrimination covered under subsection (a) and refusal to deal under subsection (l) also affects how courts evaluate each type of claim. As explained above, "[a]ll *employment discrimination claims* require the plaintiff to bear the burden of proving the elements of a prima facie case." *Victor*, 203 N.J. at 408 (emphasis added). *See also Zive*, 182 N.J. at 450 (summarizing the purpose of the *McDonnell Douglas* burden-shifting as answering "the ultimate question of whether *the employer* intentionally discriminated") (emphasis added).

In contrast, courts do not require plaintiffs claiming a refusal to deal to establish a prima facie case. *J.T.'s Tire Serv., Inc. v. United Rentals N. Am., Inc.*, 411 N.J. Super. 236 (App. Div. 2010) (analyzing a claim under *N.J.S.A.* 10:5-12(l) without requiring a prima facie case or engaging in the burden-shifting analysis); *Rubin*, 359 N.J. Super. at 110-11 (same); and *Perlowski v. Elson T. Killam Assocs., Inc.*, 384 N.J. Super. 467, 478-79 (Law Div. 2005) (same).

11

Consequently, plaintiffs claiming that a defendant refused to do business with them because of their protected status do not have to establish a prima facie case of discrimination.

Rather than address any of those issues, Capsugel argues strenuously, and repeatedly, that as an independent contractor, Rivaplata cannot recover under *N.J.S.A.* 10:5-12(l). (Br. at 5-6, 7-9). However, such claims miss the point. Whether a plaintiff is an independent contractor or an employee is irrelevant to claims under *N.J.S.A.* 10:5-12(l) because that provision does not require the plaintiff to be an employee. *See Rubin*, 359 N.J. Super. at 111 ("The conduct proscribed by *N.J.S.A.* 10:5-12(l) is exclusively related to non-employee relationships.") After all, that section of the LAD is headed "Unlawful employment practice *or* unlawful discrimination." (emphasis added) Rivaplata's claim under *N.J.S.A.* 10:5-12(l) falls under the latter category of unlawful discrimination, and so he can recover under that subsection even if he is not an "employee."

Capsugel has stated that the three-month contract expired and it chose not to enter into another contract. (Br. at 11). However, as discussed above, the record contains ample evidence on which a reasonable jury could find that Capsugel refused to deal with him because of his national origin. That evidence is summarized and cited, *supra* at p. 12-13.

Capsugel ignores this evidence and claims that Rivaplata cannot recover under *N.J.S.A.* 10:5-12(l) because he did not contract directly with Capsugel. (Br. at 7-9). Once again, this argument misses the point. The plain language of *N.J.S.A.* 10:5-12(l) makes it illegal to refuse to contract for certain impermissible reasons. Thus, the essence of the claim is that there is no contract because the defendant refused to enter into one, and so Capsugel turns the claim on its head by asserting that there must be a contract. That is likely why New Jersey courts do not require direct privity between the plaintiff and defendant to recover on a discrimination claim under *N.J.S.A.* 10:5-12(l). In one case, a tire company and its sole owner sued a truck rental company and its

branch manager under *N.J.S.A.* 10:5-12(l). *J.T.'s Tire*, 411 N.J. Super. at 237. The plaintiffs claimed that the branch manager demanded sexual favors in exchange for continuing to buy tires from the plaintiff. *Id.* The trial court dismissed the complaint for failure to state a claim and the Appellate Division reversed and held that the plaintiffs had properly alleged a claim under *N.J.S.A.* 10:5-12(l). *Id.* The Appellate Division reached this conclusion even though the owner of the tire shop had no direct contractual relationship with the truck rental company. Thus, a claim under *N.J.S.A.* 10:5-12(l) does not require a contract between the parties, and Capsugel's argument to the contrary is meritless. Consequently, there is ample evidence in the record to support a reasonable jury in finding that Capsugel refused to deal with Rivaplata because of his nationality, and Capsugel's baseless arguments do not entitle it to summary judgment.

## CONCLUSION

For all of these reasons, the Court should deny Defendant's motion for summary judgment.

                      Respectfully submitted,

                      **PASHMAN STEIN WALDER HAYDEN**
                      A Professional Corporation
                      *Attorneys for the Plaintiffs*
                      *Martino Rivaplata and CPM Consulting, LLC*

By:  /s/ *James W. Boyan III*
       JAMES W. BOYAN III

       Court Plaza South
       21 Main Street – Suite 200
       Hackensack, NJ 07601
       Tel. (201) 488-8200
       Fax. (201) 488-5556
       jboyan@pashmanstein.com

Dated:  February 18, 2020.